# EXHIBIT F

*American Express Co. v. Lipscomb*

◆ Positive
As of: July 28, 2018 12:28 AM Z

# Am. Express Co. v. Lipscomb

United States District Court for the Eastern District of Michigan, Southern Division

January 12, 1981

No. 79-72892

**Reporter**
1981 U.S. Dist. LEXIS 15049 *; 210 U.S.P.Q. (BNA) 827 **

American Express Company v. Lipscomb et al.

## Core Terms

damages, cheques, travelers, instruments, sight draft, trademark, profits, infringement, services, authorizes, unfair competition, actual damage, sales, summary judgment motion, attorney's fees, circumstances, attorneys', injunction, registered, similarity, exemplary, Consumer, words, business establishment, appointing counsel, defendant argues, exceptional case, deliberately, abandonment, continuance

## Case Summary

### Procedural Posture
Plaintiff sued for trademark infringement under *15 U.S.C.S. § 1114*, false representation of goods under *15 U.S.C.S. § 1125*, and unfair trade practices under *Mich. Comp. Laws Ann. § 445.903*. Plaintiff moved for summary judgment, and defendant moved for continuance or appointment of counsel because he was in prison.

### Overview
Plaintiff sued for trademark infringement, *15 U.S.C.S. § 1114*, false representation of goods, *15 U.S.C.S. § 1125*, and unfair trade practices, *Mich. Comp. Laws Ann. § 445.903*. Plaintiff moved for summary judgment, and defendant moved for continuance or appointment of counsel because he was in prison. The court denied defendant's motions because the court already postponed ruling several times, defendant's presence was not required for the court to rule on summary judgment, and there was no relevant authority for defendant's request for appointment of counsel for defendants in civil cases. The court granted plaintiff's motion for summary judgment because venue was proper, defendant's instruments were confusingly similar because they deceived several commercial purchasers, and defendant did not prove his abandonment defense. The court awarded plaintiff a permanent injunction, treble the actual damages, costs, and reasonable attorneys' fees because defendant acted willfully and deliberately. The court did not award defendant's profits to plaintiff because there was no proof that defendant made profits.

### Outcome
Defendant's motions for continuance and counsel appointment denied, because defendant's presence was not required and no requirement to provide civil defendants with counsel. Plaintiff's summary judgment motion granted because venue was proper, defendant's instruments were confusingly similar, and defendant did not prove his abandonment defense.

## LexisNexis® Headnotes

Trademark Law > Causes of Action Involving Trademarks > Infringement Actions > General Overview

*HN1*[ ] **Causes of Action Involving Trademarks, Infringement Actions**

See the Lanham Act, *15 U.S.C.S. § 1114(1)*.

Trademark Law > ... > Entertainment Industry Falsity & Performance Misattribution > Trade Dress Protection > General Overview

Trademark Law > ... > Federal Unfair Competition Law > False Advertising > General Overview

Business & Corporate Compliance > ... > Federal Unfair Competition Law > False Designation of Origin > Elements of False Designation of Origin

Trademark Law > Causes of Action Involving Trademarks > Infringement Actions > General Overview

*HN2*[ ] **Entertainment Industry Falsity & Performance Misattribution, Trade Dress Protection**

See the Lanham Act, *15 U.S.C.S. § 1125(a).*

Torts > Business Torts > Unfair Business Practices > General Overview

*HN3*[ ] **Business Torts, Unfair Business Practices**

See the Michigan Consumer Protection Act, *Mich. Comp. Laws Ann. § 445.903.*

Civil Procedure > Preliminary Considerations > Venue > Corporations

Governments > State & Territorial Governments > Licenses

Civil Procedure > Preliminary Considerations > Venue > General Overview

*HN4*[ ] **Venue, Corporations**

Assuming that the defendant company is to be treated as a corporation, venue is proper according to *28 U.S.C.S. § 1391(c),* which establishes venue in the district where the corporation is licensed to do business or where it does business.

Trademark Law > ... > Similarity of Marks > Appearance, Meaning & Sound > General Overview

Trademark Law > Causes of Action Involving Trademarks > Infringement Actions > General Overview

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

*HN5*[ ] **Similarity of Marks, Appearance, Meaning & Sound**

The sine qua non of a claim of trademark infringement or passing-off is the likelihood of consumer confusion based on the similarity of the goods.

Trademark Law > ... > Similarity of Marks > Appearance, Meaning & Sound > General Overview

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

Trademark Law > ... > Factors for Determining Confusion > Intent of Defendant to Confuse > General Overview

*HN6*[ ] **Similarity of Marks, Appearance, Meaning & Sound**

The issue of confusion or similarity is, in part, an issue of fact, but in a proper case the issue may be resolved summarily by the court. Among the factors to be considered are: the degree of similarity of the marks, the degree of similarity of the products, the competitive proximity of the products, the degree of care likely to be exercised by purchasers, the defendant's intent, and evidence of actual deception or confusion of the public.

Antitrust & Trade Law > Clayton Act > Defenses

Trademark Law > ... > Defenses > Defenses to Incontestability > Acquiescence

Trademark Law > Causes of Action Involving Trademarks > Infringement Actions > General Overview

Trademark Law > ... > Infringement Actions > Defenses > General Overview

Trademark Law > Abandonment > General Overview

Trademark Law > ... > Registration Procedures > Federal Registration > Federal Registration as Evidence

*HN7*[ ] **Clayton Act, Defenses**

If the owner of the registered mark abandons the mark, or knowingly acquiesces in the widespread use of the mark by other persons, the owner may not be able to recover for infringement. But this is an affirmative defense; the burden is on the defendant to prove that plaintiff intended to abandon its mark.

Trademark Law > ... > Remedies > Equitable

Relief > General Overview

Civil Procedure > Remedies > Damages > Punitive Damages

Trademark Law > ... > Unfair Competition > Federal Unfair Competition Law > General Overview

Trademark Law > ... > Remedies > Damages > General Overview

Trademark Law > ... > Factors for Determining Confusion > Intent of Defendant to Confuse > General Overview

### HN8[⚑] Remedies, Equitable Relief

Although not necessary to establish liability or to obtain an injunction, the key to a money award is proof of defendant's intent.

Trademark Law > ... > Remedies > Damages > General Overview

### HN9[⚑] Remedies, Damages

See the Lanham Act, 15 U.S.C.S. § 1117.

Trademark Law > ... > Remedies > Damages > General Overview

### HN10[⚑] Remedies, Damages

A prevailing plaintiff may recover: defendant's profits, based on proof of defendant's sales, with an adjustment by the court to achieve fairness in view of the circumstances of the case; treble damages, based on proof of plaintiff's actual losses; costs; and attorney's fees, in exceptional cases.

Trademark Law > ... > Remedies > Damages > General Overview

Trademark Law > ... > Unfair Competition > Federal Unfair Competition Law > General Overview

### HN11[⚑] Remedies, Damages

The Lanham Act, 15 U.S.C.S. § 1117 authorizes granting extraordinary damages in certain circumstances, as where the defendant acted intentionally and fraudulently.

Trademark Law > ... > Remedies > Damages > General Overview

### HN12[⚑] Remedies, Damages

The Lanham Act, 15 U.S.C.S. § 1117 forbids an award as a punitive measure.

Civil Procedure > Remedies > Damages > Punitive Damages

Trademark Law > ... > Unfair Competition > Federal Unfair Competition Law > General Overview

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Procedure > Remedies > Damages > General Overview

Trademark Law > ... > Remedies > Damages > General Overview

### HN13[⚑] Damages, Punitive Damages

The Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.911(2) does not authorize an award of punitive or exemplary damages. The Act only provides for actual damages and reasonable attorneys' fees..

Trademark Law > ... > Remedies > Damages > General Overview

### HN14[⚑] Remedies, Damages

In the absence of concrete evidence, an award for injury a plaintiff's good will and reputation is speculative.

Trademark Law > ... > Remedies > Damages > General Overview

### HN15[⚑] Remedies, Damages

The remedy of attorneys' fees awards should be available in exceptional cases, i.e., in infringement cases where the acts of infringement can be characterized as "malicious,"

"fraudulent," "deliberate," or "willful." The attorney fee remedy should coexist with existing provision for treble damages.

**Counsel:** [*1] Richard E. Alexander, James D. Zalewa, and Richard E. Alexander, Ltd., all of Chicago, Ill., and Michael A. Holmes, and Cross, Wrock, Miller & Vieson, both of Detroit, Mich., for plaintiff.

Robert E. Lipscomb, pro se.

**Opinion by:** PRATT

# Opinion

[**829] Pratt, District Judge.

This is an action for injunctive and monetary relief for alleged trademark infringement (*15 U.S.C. § 1114*), false representation of goods (*15 U.S.C. § 1125*), and unfair trade practices (*M.C.L.A. § 445.903*). The Court has before it two motions: defendant Lipscomb's motion for continuance or appointment of counsel, and plaintiff's motion for summary judgment. [**830]

I. Defendant's Motion For Continuance Or Appointment Of Counsel

Defendant Lipscomb, who is presently in custody in Washtenaw County Jail, asks the Court to suspend this litigation until his criminal charges are resolved. Lipscomb argues that he has been unable to prepare a proper defense in this case due to his incarceration on those criminal charges. In addition Lipscomb asks the Court to appoint counsel to represent him because he cannot afford to hire an attorney for himself.

The Court must deny defendant Lipscomb's requests. In the first place it [*2] should be noted that the Court has already granted defendant Lipscomb a series of continuances, despite the resultant delay and risk of prejudice to plaintiff's rights. The Court postponed scheduled proceedings pursuant to defendant Lipscomb's motions for continuance filed on August 30, 1979, January 8, 1980, April 4, 1980, and July 8, 1980. The Court sought to be as fair as possible and to allow defendant Lipscomb to straighten out his problems with state law enforcement authorities. The Court adjourned the trial date in this case from April 30, 1980 to May 28 and then to July 11, so that defendant Lipscomb would be able to be present and participate. Finally the Court adjourned the trial indefinitely, at defendant Lipscomb's request, because he was in custody in Ann Arbor unable to post bond.

There is no reason to postpone consideration of plaintiff's summary judgment motion or to prolong these proceedings further. Defendant Lipscomb's appearance in Court is not required for purposes of the summary judgment motion. The Court can and will decide the motion strictly on the basis of the parties' written submissions. [1]

[*3] Defendant Lipscomb cites no relevant authority for his request for appointment of counsel at public expense. It is true that defendants in criminal cases have a right to appointed counsel, but the Court is not aware of any precedent authorizing appointment of counsel for defendants in civil cases. The Court notes that defendant Lipscomb displays a degree of legal aptitude and learning uncommon among pro se litigants. Of course the Court will consider defendant Lipscomb's case with the same solicitude given to any pro se litigant, excusing technical mistakes and striving to achieve substantial justice.

II. Plaintiff's Motion For Summary Judgment

Plaintiff, American Express Company, is a New York corporation providing many financial services. In 1891 plaintiff introduced a travelers cheque service and sales of plaintiff's travelers cheques have grown prodigiously around the world. Plaintiff owns United States Trademark Registration No. 1,024,840 for its mark "American Express" for financially related services, including travelers cheque services.

Defendant Robert E. Lipscomb is an individual residing in Michigan. Defendant Richard Dyer has not filed an answer or made [*4] any appearance in this case. [2] Defendant

---

[1] In defendant Lipscomb's motion for continuance he avers that he cannot respond effectively to plaintiff's summary judgment motion because he has no access to his files, writing materials, and lawbooks. However, subsequent pleadings ("Defendants' Traverse" and "Defendants' Brief in Opposition") demonstrate that defendant's ability to present his legal defense is not significantly impaired. Defendant's latest pleadings contain several legal citations, and numerous incisive arguments attempting to show why, on the law and facts, plaintiff's motion should be denied. These recent papers, composed in jail, are of similar quality to Lipscomb's previous submissions, composed when he was not in jail.

[2] The plaintiff has not requested a default judgment against defendant Dyer despite his failure to answer. Defendant Dyer has also been sent copies of pertinent pleadings by regular mail, including the Motion for Summary Judgment. Under these circumstances, the Court will presume that defendant Dyer does not contest the allegations and has conceded his involvement and participation. Thus, although this opinion refers to defendant in the singular the reference should be considered to include defendant Dyer except where defendant Lipscomb is specifically mentioned.

International American Express Company is an unincorporated association certified to transact business in Detroit, Michigan.

The following facts have been established. Defendant Dyer assisted defendant Lipscomb in the operation of the International American Express Company. Defendant Lipscomb designed a "sight draft" of the International American Express Company, and had 1,600 of these sight drafts printed, in various denominations, for a total face value of approximately $ 100,000. Lipscomb distributed an undetermined quantity of these sight drafts to various persons. [*5] At least thirteen business establishments in Michigan and elsewhere accepted Lipscomb's International American Express sight drafts, believing [**831] that these were plaintiff American Express Company's travelers cheques. These businesses demanded that plaintiff American Express Company honor these drafts. Plaintiff did so, reimbursing each of the thirteen businesses.

Plaintiff alleges that the defendants deliberately designed and sold their "International American Express Company" sight drafts to trade on the goodwill of the plaintiff and to confuse potential purchasers of plaintiff's travelers cheques, in violation of state and federal law.³ Plaintiff seeks a permanent injunction, as well as actual and exemplary damages.

[*6] Defendant Lipscomb has raised several arguments challenging plaintiff's asserted right to summary judgment. The Court will address Lipscomb's major arguments in turn.⁴

[*7] A. Venue

At the outset defendant contends that venue is improper here because the "home base" of International American Express Company is in Dallas, Texas. Defendant offers no evidence in support of this contention. There is evidence, however, that the defendant company is registered to do business in Detroit, Michigan, that the company maintained a telephone answering service here, and that the company consented to be sued here. See Exhibit D of plaintiff's Complaint. So, HN4[↑] assuming that the defendant company is to be treated as a corporation, venue is proper according to 28 U.S.C. § 1391(c), which establishes venue in the district where the corporation is licensed to do business or where it does business. Additionally, venue over the individual defendants is proper because defendant Lipscomb is a resident of Detroit, Michigan and the claim arose here, where the alleged "passing-off" occurred. 28 U.S.C. § 1391(b).

B. Similarity Of The Travelers Cheques

---

³ Plaintiff's federal Lanham Act claim rests on two provisions of the Act. The first reads in part:

HN1[↑] "Any person who shall, without the consent of the registrant --

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) * * * * shall be liable in a civil action by the registrant * * *" *15 U.S.C. § 1114(1)*.

The second provides:

HN2[↑] "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representations, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of such false description or representation." *15 U.S.C. § 1125(a)*.

Plaintiff's state claim is based on the HN3[↑] Michigan Consumer Protection Act which proscribes unfair competition including:

"(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(b) * * *

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not have.

(d) * * *." *M.C.L.A. § 445.903*.

⁴ Some of defendant Lipscomb's arguments require little or no discussion. For instance, Lipscomb claims immunity because the trade name "International American Express Company" is lawfully registered in Texas and Michigan. The Court already considered and rejected this defense in connection with defendant's motion to dismiss. See Memorandum Opinion and Order, September 10, 1979. Lipscomb also argues that he is not the owner of the trade name in question, but this technicality is irrelevant if plaintiff has established that Lipscomb was responsible for designing and palming off instruments confusingly similar to plaintiff's travelers cheques. Finally, Lipscomb argues that his right to create negotiable instruments is protected by the Uniform Commercial Code and the Constitution (freedom of speech and of contract). However, there is no right to create negotiable instruments which violate trademark and unfair competition laws. In other words, the defendant has no authority for the contention that the Lanham Act is unconstitutional.

HN5[↑] The sine qua non of a claim of trademark infringement or passing-off is the likelihood of consumer confusion based on the similarity of the goods. *B.H. Bunn Co. v. AAA Replacement Parts, Co., 451 F.2d 1254, 171 [*8] USPQ 780 (5th Cir. 1971)*; *Boston Professional Hockey Assn., Inc. v. Dallas Cap and Emblem Mfg. Inc., 510 F.2d 1004, 185 USPQ 364 (5th Cir. 1975)*; *McDonald's Corp. v. Grenvill, 441 F.Supp. 71, 196 USPQ 722 (N.D. Ill. 1977)*. HN6[↑] The issue of confusion or similarity is, in part, an issue of fact, but in a proper case the issue may be resolved summarily by the Court. [**832] *Marquis Who's Who v. North American Ad. Assoc., 426 F.Supp. 139, 194 USPQ 441 (D.C. 1976)*, aff'd *574 F.2d 637*; *Vitarroz Corp. v. River Brand Rice Mills, 266 F.Supp. 981, 153 USPQ 398 (D.C. N.Y. 1967)*. Among the factors to be considered are: the degree of similarity of the marks, the degree of similarity of the products, the competitive proximity of the products, the degree of care likely to be exercised by purchasers, the defendant's intent, and evidence of actual deception or confusion of the public. *Ferrara v. Scharf, 466 F.Supp. 125, 204 USPQ 118 (D.C. N.Y. 1979)*.

Defendant argues that the International American Express Company sight drafts are quite dissimilar from plaintiff's travelers cheques. See plaintiff's Exhibit 2. Specifically, defendant's instruments are payable in a different currency (Belizian dollars); defendant's [*9] instruments also have different background, denominational counter, and allegorical logo.

It is true that the defendant's instruments are not identical to plaintiff's. However, there is a fundamental resemblance. First, defendant does prominently display plaintiff's trademark in the center of defendant's instruments, printed in a similar type-style. In fact, there is evidence that defendant Lipscomb deliberately designed the instruments to emphasize plaintiff's trademark. See Section D of this Opinion. Defendant's instruments, like plaintiff's, are printed in dark blue on a light blue background. Defendant's instruments are of the same size and dimensions as plaintiff's instruments. Moreover, the instruments are in direct competition; they are sold for the same purposes and in similar denominations. Thus defendant's instruments have a demonstrable tendency to confuse.

Most important, however, is the evidence of actual confusion in this case. At least thirteen business establishments accepted defendant's sight drafts, believing them to be plaintiff's travelers cheques. See Stephen Norman's Affidavit and attached exhibits. The Court, therefore, is not required to speculate [*10] about the potential for confusion inherent in defendant's products. Defendant's instruments in fact have deceived several commercial purchasers. So there can be no genuine dispute over the confusing similarity of defendant's instruments.

C. Public Domain

Next defendant argues that plaintiff's mark "American Express Company" has passed into the public domain. As to plaintiff's claim for trademark infringement under *15 U.S.C. § 1114*, defendant's argument may be considered as an assertion of the defense of abandonment. HN7[↑] If the owner of the registered mark abandons the mark, or knowingly acquiesces in the widespread use of the mark by other persons, the owner may not be able to recover for infringement. But this is an affirmative defense; the burden is on the defendant to prove that plaintiff intended to abandon its mark. *Five Platters, Inc. v. Purdie, 419 F.Supp. 372, 193 USPQ 411 (Md. 1976)*; *American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 136 USPQ 286 (5th Cir. 1963)*; *15 U.S.C. § 1115*. Defendant has not introduced any evidence concerning the use of plaintiff's mark by other persons; nor has defendant even suggested or alleged facts which would support the defense [*11] of abandonment. Thus defendant has not sustained his burden to overcome the presumption of validity attaching to federally-registered marks. *Armstrong Cork Co. v. Armstrong Plastic Covers, 434 F.Supp. 860, 195 USPQ 387 (Mo. 1977)*.

In addition, the abandonment defense is not germane to plaintiff's claims of false designation or "palming off". *15 U.S.C. § 1125* and *M.C.L.A. 445.903*. By his public domain argument, defendant may mean either that plaintiff's mark is widely used by others, or simply that plaintiff's mark is famous and universally recognized. Even assuming either of these unsubstantiated assumptions to be true, the critical question in "palming off" cases remains: is the public likely to be deceived into thinking the defendant's products are plaintiff's products? The record discloses that the public definitely has been deceived by defendant's products. So the alleged fame or prevalence of plaintiff's mark is irrelevant.

D. Damages

Defendant argues that even if plaintiff has established its right to injunctive relief, plaintiff has not established its right to monetary relief. In particular, defendant argues, plaintiff has not offered any proof concerning [*12] plaintiff's losses or defendant's gains resulting from the infringement. Moreover, defendant argues, when seeking a monetary award, as opposed to an injunction, the plaintiff in an unfair competition case must prove that the defendant acted with wrongful or fraudulent intent. Yet, according to defendant Lipscomb, this issue cannot be resolved without a trial, because witnesses will testify that defendant Lipscomb was told by state officials in Michigan, Texas, and Missouri that it was permissible to

use the name "International [**833] American Express Company". See Defendant's Motion to Dismiss, page 4.

Plaintiff asserts that it has submitted concrete proof of actual pecuniary losses -- plaintiff's reimbursement of those establishments which accepted defendant's sight drafts mistaking them for plaintiff's travelers cheques. In addition to these actual damages, plaintiff seeks an award for damage to its reputation and good will, exemplary and punitive damages, and attorneys fees. *HN8*[⬆]

Although not necessary to establish liability or to obtain an injunction, the key to a money award is proof of defendant's intent. Cf. 4 Callman Unfair Competition Trademarks and Monopolies, § 89.2(a) [*13] at 269. Defendant Lipscomb maintains that he acted in the bona fide belief that his sight drafts were lawful and permissible because the designation "International American Express Company" had been approved by state authorities. Yet defendant Lipscomb does not aver that any state officials saw or approved his sight drafts or his plan for marketing the sight drafts. Defendant Lipscomb only avers that state officials told him "International American Express Company" was acceptable for purposes of registering the name of his unincorporated association.

On the other hand, there is overwhelming evidence that defendant Lipscomb proceeded knowingly and willfully in a scheme to trade on the name and reputation of plaintiff by selling items deceptively similar to plaintiff's travelers cheques, bearing plaintiff's trademark. Most revealing are Lipscomb's instructions to a graphic designer regarding the design of the sight drafts:

"The object is to prominently display the words American Express Co. The words 'International' as well as 'Safe-Draft Travel Money' should be small, unobtrusive and light face.

The main idea is to make those 3 words ['American Express Co.'] leap into [*14] the eyes of the reader."

Deposition Exhibit 17 (letter of Lipscomb to Tansley, August 7, 1978, pages 3-4).

It is relevant in this context that defendant Lipscomb has been convicted of counterfeiting United States Federal Reserve Notes and interstate transportation of false security (specifically, a "United America Express" time bill of exchange designed to resemble a travelers cheque). See Lipscomb Deposition at pp. 3-10. Finally the infringement and palming off here is so flagrant that wrongful intent may be inferred. Defendant's instruments, bearing a striking resemblance to plaintiff's travelers cheques, successfully duped a wide variety of business establishments. The Court concludes that defendant Lipscomb engaged in a willful and deliberate scheme of infringement and unfair competition. *HN9*[⬆]

Section 35 of the Lanham Act governs the award of damages:[5]

[*15] "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation [*16] and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party." *15 U.S.C. § 1117.*

Accordingly *HN10*[⬆] a prevailing plaintiff may recover: [**834]

Defendant's profits, based on proof of defendant's sales, with an adjustment by the court to achieve fairness in view of the circumstances of the case;

Trible damages, based on proof of plaintiff's actual losses;

Costs; and

---

[5] In addition to its federal Lanham Act claims plaintiff asserts claims under the Michigan Consumer Protection Act, *M.C.L.A. § 445.901 et seq.* However the Michigan Consumer Protection Act does not give plaintiff a more expansive right to damages than the Lanham Act. Rather, the Michigan Act limits plaintiff's recovery to "actual damages or $ 250.00, whichever is greater, together with reasonable attorneys' fees". *M.C.L.A. § 445.911(2).* Since the Lanham Act authorizes recovery of actual damages and attorneys' fees, along with other categories of damages, the discussion of the damages issue will focus on the federal Lanham Act.

Attorney fees, in exceptional cases. [6] *Jones Apparel Group v. Steinman, 466 F.Supp. 560, 562-563, 203 USPQ 1002, 1004-1005 (E.D. Penn. 1979)*.

[*17] In the case at bar plaintiff has not demonstrated its right to recover defendant's profits, because there is no proof that defendant made any sales as such. The Court cannot simply presume that defendant was enriched by his scheme and make a speculative award on this basis. [7] Since plaintiff has presented no proof of defendant's profits in this case and plaintiff has not demonstrated that denying recovery based on profits would be "inadequate", the Court cannot make an award of profits or adjust such award upward. See *15 U.S.C. § 1117*.

[*18] Plaintiff has submitted uncontraverted evidence of its actual proximate damages in the amount of $ 1,100.00. The affidavit of Stephen P. Norman and the attached exhibits show that plaintiff incurred $ 1,100.00 in necessary expenses in order to repair damage done by defendant and to prevent further losses. Specifically these exhibits show that plaintiff honored $ 1,100.00 worth of defendant's sight drafts upon presentation by businesses which had been deceived by defendant's imitation travelers cheques.

Plaintiff also contends that it has suffered further actual damages in the form of injury to its reputation and good will. Plaintiff argues that the $ 1,100.00 worth of claims presented to plaintiff so far represent only the "tip of the iceberg". But plaintiff concedes that

"Plaintiff has no way of knowing how many businesses may now or in the future refuse legitimate American Express Company travelers cheques since they or someone they know has been defrauded by Mr. Lipscomb." Plaintiff's Brief, page 8.

*HN14*[ ] In the absence of concrete evidence, an award for injury to plaintiff's good will and reputation would be speculative. See *Agr. Services Ass'n, Inc. v. Ferry-Morse Seed [*19] Co., 551 F.2d 1057, 1070-1072 (6th Cir. 1977); Roundhouse v. Owens-Illinois, 604 F.2d 990, 995 (6th Cir. 1979)*.

So plaintiff is entitled to an award of $ 1,100.00 in actual damages. Under the statutory authorization of treble damages, the Court will enter judgment in the amount of $ 3,300.00, plus costs.

Finally, the Lanham Act authorizes an award of reasonable attorneys' fees "in exceptional cases". *15 U.S.C. § 1117*. The legislative history of this provision illuminates the meaning of the phrase, "in exceptional cases".

"[The provision] would authorize award of attorney fees to the prevailing party in trademark litigation where justified by equitable considerations. [**835]

[T]he Committee agrees that *HN15*[ ] the remedy [of attorneys fees awards] should be available in exceptional cases, i.e., in infringement cases where the acts of infringement can be characterized as 'malicious', 'fraudulent', 'deliberate', or 'willful'. The attorney fee remedy should coexist with existing provision for treble damages * * *"

Senate Report No. 93-1400, 93rd Congress, 1974 U.s. Code Congressional and Administrative News 7132-7133.

The Court has already determined that defendant

---

[6] Plaintiff asks for exemplary or punitive damages, but the statute precludes such damages: the damage award "shall constitute compensation and not a penalty". However, the statutory provisions for treble damages and for equitable adjustment of defendant's profits serve as a functional substitute for common law exemplary damages. 4 Callmann Unfair Competition Trademarks and Monopolies, § 89.3(d) at 326. In other words, *HN11*[ ] the statute authorizes granting extraordinary damages in certain circumstances, as where the defendant acted intentionally and fraudulently. The difference is that the statute expressly circumscribes the scope of the court's discretion to so augment plaintiff's damage award. Id., § 89.1(c) at 265-266. Further *HN12*[ ] the statute forbids an award as a punitive measure.

It should also be noted that *HN13*[ ] the Michigan Consumer Protection Act does not authorize an award of punitive or exemplary damages. The Michigan Act only provides for actual damages and reasonable attorneys' fees. *M.C.L.A. § 445.911(2)*. Plaintiff has not cited any Michigan authority which would permit an award of punitive or exemplary damages for a claim made under the Michigan Consumer Protection Act. See 4 Callmann Unfair Competition Trademarks and Monopolies § 89.1(a) at 248-249 and n. 26.

[7] The only known "sales" of defendant's counterfeit travelers cheques concern those International American Express Company cheques for which plaintiff reimbursed the thirteen defrauded business establishments. Since the Court will grant plaintiff damages for the amount of these reimbursements (see page 13, infra), it is not necessary to inquire further whether plaintiff should recover this amount on the alternate theory that it represents the amount of proven sales of defendant's bogus travelers cheques.

The problem is that there is no direct proof that the presentation of the imitation travelers cheques to the thirteen businesses represent sales by the defendants. There is no evidence that the defendants were the persons who used or presented the cheques; nor is there any concrete evidence that the defendants sold the cheques to third persons who in turn presented the cheques to the business establishments in question.

Lipscomb [*20] acted willfully and deliberately; so plaintiff is entitled to recover reasonable attorneys' fees. Upon submission of appropriate documentation the Court will determine what reasonable fees amount to in this case.

In conclusion, plaintiff's Motion for Summary Judgment is granted. Plaintiff may have a permanent injunction and $3,300.00 in damages, as well as costs and reasonable attorneys' fees.

It is so ordered.

End of Document